## THE EDWARD J. BERWIND.

### (District Court, E. D. New York. March 27, 1914.)

COLLISION (§ 100*)—STEAM VESSELS IN FOG—EXCESSIVE SPEED.

> A tug, proceeding from the Brooklyn shore to pass around the Battery in the early morning in a fog, *held*, on the evidence, solely in fault for a collision with another tug which was coming around the Battery from North river to a pier a short distance above the Battery, on the ground that she was going at excessive speed.

> [Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 213–215; Dec. Dig. § 100.*]

In Admiralty. Suit for collision by John Carroll, as owner of the steam tug Seven Brothers, against the steam tug Edward J. Berwind. Decree for libelant.

Foley & Martin, of New York City, for libelant.
Harrington, Bigham & Englar, of New York City, for claimant.

CHATFIELD, District Judge. The Berwind is a large powerful tug, which upon the morning of March 31, 1913, started from Congress street, Brooklyn, to proceed between Governors Island and the Battery on the way to the North river, at about 7 o'clock. The Seven Brothers, a smaller tug belonging to the libelant, came down the Hudson river and around the Battery, to go to a pier just above the ferry slips on the Manhattan shore at that point. A heavy fog prevented navigation earlier in the day, but as daylight came on and the fog lifted, the Manhattan shore could be slightly discerned from the Brooklyn side, and the Berwind, preceded by the Transport, decided that it would be possible to proceed. They therefore left the Brook-

lyn shore and, as they neared New York, the fog again shut down, rendering it impossible to see more than a few boat lengths ahead. Governors Island was invisible from the Battery.

The witnesses upon the Seven Brothers, a reporter attached to the wireless station between the revenue cutter slip and the Staten Island Ferry piers, and two men upon a Staten Island ferryboat, testify that the Berwind, going at considerable speed, passed close by the slip of the Staten Island ferry and struck the Seven Brothers, having starboarded her helm just before the collision. These witnesses agree that the Berwind had headed on a course slightly toward the Battery before this change of helm, and that immediately after the collision the Berwind, with the Seven Brothers impinged on her stem, turned toward the New York shore in a circle, until the Seven Brothers sank, after her crew had climbed upon the Berwind. Later a small boat, from which a dog belonging to the captain was rescued, had floated off from the upper deck.

It appears that the Seven Brothers was following a course parallel to the Battery shore at about the same distance therefrom as that pursued by the Berwind in the opposite direction. Both boats were sounding fog whistles, and the captain of the Seven Brothers, upon reaching the proximity of the Berwind, stopped his engines and then porting his helm reversed.

All of the witnesses substantially agree that if the Berwind had not sheered to port and the Seven Brothers had continued under a port helm, collision probably would have been averted. The speed of the Berwind and her turn to port brought her out into the stream in a position to strike the Seven Brothers substantially amidships, at a time when the Seven Brothers was backing to avert collision from the sheer of the Berwind. The effect of the working of the Seven Brothers' engines while the boat was impaled upon the bow of the Berwind, and also the movement of the Berwind with her wheel to port, in order to lessen the effect of collision, carried the Seven Brothers around in a circle to the point of sinking.

A deck hand, acting as watchman upon the bow of the Berwind, reported the Seven Brothers as soon as she was made out in the fog, and when she was about 200 feet away.

No fault can be found with the lookout and one of the witnesses for the libelant testified that this lookout actually called to the pilot of the Berwind to go back as soon as the Seven Brothers was discovered, accompanying his warning with violent motions of the hands, and that he later referred to the captain of the Berwind in contemptuous language and stated that he had told him to go back.

The captain of the other vessel, the Transport, had left Brooklyn with the Berwind, but ran in along the Battery and waited for the fog to lift. He is very uncertain about the boats and matters testified to by the other witnesses in the case, but is extremely positive as to his distance from the Barge Office and as to the movements of the Berwind. According to his testimony the Berwind was close to the Staten Island Ferry slips when coming around toward the Barge Office and was continually headed in toward shore after reaching that

point. His testimony is apparently the basis for the defense that the Seven Brothers, by reversing and backing before the collision, put herself across the bow of the Berwind.

But it is impossible to conclude from the testimony as a whole that the Seven Brothers backed a sufficient distance after her engines were reversed to get across the bow of the Berwind, if the Berwind had not sheered to port and if she had not had considerable headway. If the Berwind was headed inshore, and if the Seven Brothers was originally out far enough to clear the Berwind when holding her course, then the Seven Brothers would not have needed to reverse to keep out of the way. On the contrary, the Berwind is plainly shown to have been feeling her way around the Battery, going as close to the piers as she dared, and then working offshore from time to time, but all the while proceeding at a rate which in the fog then prevailing made her movements unsafe.

The boats heard each other's whistles, their relative position was known, and if the Berwind had slowed down when the Seven Brothers' whistle indicated the presence of another boat, no accident could have happened. Instead of so doing, she took the whistle of the Seven Brothers as an indication of a course on which to proceed at considerable speed, when she was not able because of the fog to navigate with safety. The mere suggested possibility that the Seven Brothers might have gotten out of the way if she had not reversed, and that she could thus have escaped the result of the Berwind's negligence, is no defense.

The narrow channel rule does not apply, for the movements of the vessels controlled the situation, and not their general position before the necessity arose to apply the general rules of passing and of navigating in a fog.

The libelant may have a decree.